UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY PALOMBO | ) | CASE NO.  4:06CV1640 |
| | ) | |
| Plaintiff | ) | JUDGE JOHN R. ADAMS |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL | ) | **OF MAGISTRATE JUDGE** |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Anthony Palombo Supplemental Security Income Benefits (SSI).  The Plaintiff asserts that Administrative Law Judge (ALJ) Peter Beckman  erred in his April 20, 2006 decision in finding that Plaintiff was not disabled because he could perform a significant number of jobs, despite the limitations caused by his impairments (Tr. 13-23).  For the following reasons, the undersigned recommends that the Court affirm the decision of the ALJ and enter judgment for the Defendant:

**I.**  **PROCEDURAL HISTORY**

Plaintiff filed an SSI  application on November 16, 2004, alleging that he had been disabled since June 1, 2003 (Tr. 13).  His application was denied initially and on reconsideration, and Plaintiff requested an administrative hearing (Tr. 31-39).  The ALJ held a hearing on February 24, 2006, at which Plaintiff, who was represented by an attorney, medical expert Carolee Lesyk, Ph.D., and

1

vocational expert, Thomas Nemberger, appeared and testified (Tr. 250-274). The ALJ, in a April 20, 2006 decision, found that Plaintiff was not disabled, because he could perform a significant number of jobs, despite the limitations caused by his impairments (Tr. 13-23). The ALJ's decision became the final decision of the agency when the Appeals Council denied review of that decision (Tr. 5-10). Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1783(c)(3).

**II.     STATEMENT OF FACTS**

Plaintiff was born on February 20, 1986 and was eighteen years of age when he applied for SSI (Tr. 21, 31). He completed high school and has no past relevant work (*id.*). He alleges disability on the basis of borderline intellectual functioning and psychological disorders (Tr. 31).

**III.    SUMMARY OF MEDICAL EVIDENCE AND SCHOOL RECORDS**

School records show that Plaintiff was described by his father, on October 1, 2001, as having an outward personality and being interested in music and computers (Tr. 83). Plaintiff was also described by a teacher on this date as socializing "well in groups," and as being polite (Tr. 77). However, the teacher also noted that Plaintiff had a "limited attention span," and that he often failed to do his homework and was "very hard-headed when it comes to deciding how much work to do" (*id.*). A different teacher described Plaintiff, on October 3, 2001, as being quiet and as working "best by himself" (Tr. 78). However, this teacher also said that Plaintiff would contribute to class discussions when called upon (*id.*). Conversely, another teacher reported, on December 5, 2001, that Plaintiff was "able to participate in class by taking notes, completing homework, and following

directions" (Tr. 76). Plaintiff's father indicated that his son received excellent grades between 1992 and 2001 (Tr. 104). Plaintiff met graduation testing requirements in June 2004 (Tr. 89, 173).

A school psychologist described Plaintiff, in a March 28, 2002 report, as being a "well-behaved young man who may become confused and need additional instruction with assignments" (Tr. 82). He struggled with classes that did not require primarily verbal reasoning skills (*id.*). The psychologist also described Plaintiff as lacking motivation and having "difficulty functioning within a group" (Tr. 80). Intelligence testing performed in March 2002 produced a Full Scale IQ of seventy-six, Verbal IQ of ninety-one, and Performance IQ of sixty-five, and he was found to be functioning in the borderline range (Tr. 190).

Plaintiff received nine days of treatment at Discovery House on two occasions, in October and November 2003 (Tr. 229). He had problems getting out of bed, and made minimal progress toward treatment goals (*id.*).

Treating psychiatrist Pradeep Mathur, M.D. noted, in October 2003, that Plaintiff had friends at school, but was going through a gender identity crisis, and "can't get [out of bed] in mornings - generally not up 'til 11 am" (Tr. 241). On multiple occasions in 2004 and 2005, Dr. Mathur indicated that Plaintiff was not depressed or psychotic, and was alert and properly oriented (Tr. 234-40). Dr. Mathur described Plaintiff, on May 20, 2005, as having a "bright mood and effect" (Tr. 155). He had poor frustration tolerance and impaired concentration and memory (*id.*). Dr. Mathur indicated that Plaintiff did not deal well with new situations, and had limited social interaction (*id.*). His self-care was adequate (*id.*). He was moderately coping with daily stressors (Tr. 156). Dr. Mathur opined that Plaintiff needed assistance in managing any benefits he might receive (*id.*).

Plaintiff had individual and family counseling sessions with James P. Esperon, Ph.D. from 2002 to 2004 (Tr. 215-28). Dr. Esperon noted that Plaintiff stayed up very late and could not get up

to go to school (Tr. 227). Dr. Esperon suggested that television be discontinued at 9 p.m. (Tr. 224). Plaintiff napped in the afternoon, and his mood was generally stable (Tr. 223). He reported obsessive thoughts about sex (Tr. 221). Plaintiff worked part-time jobs, and was home schooled two days per week, but reliability was a problem; nonetheless, Dr. Esperon was reportedly hopeful of full-time employment at high school graduation (Tr. 217-20).

Psychologists Karen Staily Steiger, Ph.D. and John S. Waddel, Ph.D. reviewed Plaintiff's claim file in March and June 2005 respectively, and concluded that he had borderline intellectual functioning ("BIF"), anxiety-related disorders exhibited in problems dealing with new situations, and pervasive developmental disorders exhibited in problems dealing with social interaction and poor frustration tolerance (Tr. 130-39). The reviewing psychologists opined that Plaintiff was mildly limited in his activities of daily living and in maintaining concentration, persistence, and pace, moderately limited in social functioning, and had exhibited no episodes of decompensation of extended duration (Tr. 140).

Psychologist John Brescia, M.A. performed a consultative examination of Plaintiff on November 7, 2005 (Tr. 157-65). Mr. Brescia found Plaintiff to express himself coherently, and to have an appropriate effect (Tr. 159). Indeed, Plaintiff told Mr. Brescia that he had been seriously depressed recently (Tr. 160). He reportedly cried if he did not get his own way (*id.*). Plaintiff also told Mr. Brescia that he tended to be anxious in a group of people or in a crowded place, but he did not have anxiety symptoms often (*id.*). Plaintiff also indicated that his memory and ability to concentrate was good (Tr. 161). Dr. Brescia reported that testing showed that Plaintiff's ability to concentrate was adequate, and his memory was in the low average range (Tr. 163-64). Plaintiff socialized with a group he belonged to at Youngstown State University (Tr. 161). He had a few friends (*id.*). Intelligence testing produced a Full Scale IQ of seventy-six, a Verbal IQ of eighty-five,

4

and a Performance IQ of seventy, which placed him in the borderline range of intelligence (Tr. 162, 163). Reading comprehension was below average, with functioning at an upper-primary to mid-high school level and the ability to comprehend most adult level materials (Tr. 163).

Mr. Brescia offered a diagnosis of Depressive Disorder NOS, Anxiety Disorder NOS, BIF, and Personality Disorder NOS (avoidant and dependent traits), and assigned Plaintiff a Global Assessment of Functioning (GAF) score of fifty (Tr. 165), which is indicative of serious symptoms. *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) 34 (2000). Mr. Brescia opined that Plaintiff: (1) was moderately to markedly impaired in his ability to relate to others; (2) could understand and follow simple instructions, but could not be expected to understand or implement more complex or detailed instructions; (3) had the ability to maintain attention to perform simple, repetitive tasks; (4) was moderately to markedly impaired in the ability to withstand the stress and pressures associated with day-to-day work activity; and (5) had questionable ability to handle his own affairs, in light of his lack of maturity and his tendency to overspend or buy things impulsively. (Tr. 165).

## IV.     SUMMARY OF TESTIMONY

At the hearing before the ALJ, Plaintiff testified that he lived with his mother and helped her around the house (Tr. 251). He worked some short-term jobs during high school (Tr. 251-53). Plaintiff also testified that he did not have the motivation to look for work (Tr. 253-54). He quit his short-term jobs (Tr. 253-54). Plaintiff claimed that he was disabled due to depression and anxiety (Tr. 255). He saw a psychologist every two or three months, and took medications that caused him to be tired and dizzy (*id.*). He had no friends (Tr. 256).

5

Plaintiff testified that he attended special education classes when he attended school, and that he was home schooled for a year, because he was not able to motivate himself to go to school (Tr. 256). Finally, he stated that he had problems getting along with co-workers and supervisors at his jobs (Tr. 257-58).

Thereafter, Carolee Lesyk, Ph.D. testified as a medical expert. She opined that Plaintiff's behaviors were more a matter of immaturity and poor parental training than depression (Tr. 260-61). The medical expert further opined that the assessment appearing in the record at Exhibit 6F from psychologists John Brescia, M.A. was based on Plaintiff's descriptions, though she agreed with the limitations therein with regard to Plaintiff's problems with understanding, remembering, and carrying out detailed instructions because of borderline intellectual functioning (Tr. 261-62). The medical expert opined that Plaintiff should not perform jobs requiring arbitration, confrontation, negotiation, teamwork, or high production demands (Tr. 262-63). She thought that a janitorial setting might be appropriate, in that it was fairly neutral to other humans (Tr. 263).

On cross-examination by Plaintiff's attorney, the medical expert testified that she suspected Mr. Brescia's test results to underestimate Plaintiff's capabilities, and that Plaintiff was capable of doing more intellectually, if he desired to do so (Tr. 264). While Mr. Brescia had only "one shot" to assess Plaintiff's functioning and did not have all of Plaintiff's previous records, the medical expert considered the school records as well, and thought Mr. Brescia's assessment underestimated Plaintiff's functioning (Tr. 264-65). The medical expert noted that the wrong behaviors were modeled by Plaintiff's mother (Tr. 265). The medical expert testified that not wanting to do something and not being able to do something were not the same things, and that she did not feel Plaintiff's problem with school was anxiety as much as acting on volition (Tr. 266). Finally, the medical expert agreed with the diagnosis of a personality disorder with avoidant and dependent traits

6

(Tr. 267-68).

Finally, Thomas Nemberger testified as a vocational expert. The ALJ posed a hypothetical question to the vocational expert, asking him to assume an individual with Plaintiff's vocational characteristics who should not be in a job that requires arbitration, confrontation, negotiation, production work, or teamwork (Tr. 269). The vocational expert identified the following jobs that Plaintiff could perform: pizza order taker (sedentary, about 2,000 in the region and 325,000 nationally), cafeteria attendant (light, about 1,200 region and 275,000 nationally), and housekeeper (medium, about 1,000 region and 350,000 nationally). (Tr. 269-70).

On cross-examination by Plaintiff's attorney, the vocational expert stated that the individual could not perform the aforementioned jobs if he had marked limitations in several aspects of work-related functioning [as indicated in Exhibit 6F, the report from Mr. Brescia] (Tr. 270-71).

## V.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c) (1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

7

    4.       If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

    5.       If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity (RFC). *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence,

but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII.    ANALYSIS**

The Plaintiff raises one issue, and that is whether substantial evidence supports the final decision of the Commissioner of Social Security that Plaintiff was not disabled, and, therefore, not entitled to SSI under Title XVI of the Social Security Act.

In this case, the ALJ found Plaintiff had BIF and associated learning disorders, and depressive, anxiety, obsessive compulsive, and personality/pervasive developmental disorders, but that he did not have an impairment or combination of impairments that met or medically equaled an impairment in the Listings of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-18). The ALJ further opined that Plaintiff retained the RFC to perform all basic work activities, except that he was limited to simple routine tasks and could not perform work that requires arbitration, confrontation, negotiation, production work, or teamwork (Tr. 18). Based upon the vocational expert's testimony, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy (Tr. 21-23). Therefore, the ALJ found that Plaintiff was not disabled, and denied his application for SSI (Tr. 23).

The undersigned recommends that the Court find that substantial evidence in the entire record supports the ALJ's conclusion that Plaintiff was not disabled, and, therefore, not entitled to SSI.

The ALJ found that Plaintiff was significantly limited by his mental impairments, but that he could, nonetheless, perform a significant number of jobs, despite those limitations, in accordance with

the vocational testimony.

Plaintiff's only argument is that the ALJ should have found him disabled, based on the report of the consultative psychologist, Mr. Brescia (Plaintiff's Brief at 1-5). However, the ALJ discussed the medical evidence, school records, and other evidence of Plaintiff's mental limitations, and provided a correct analysis for giving Mr. Brescia's opinion less weight than that of the medical expert.

The ALJ's decision contains a correct analysis of the evidence, noting contradictions of Mr. Brescia's negative assessment by the school records, reports from Plaintiff's treating psychiatrist, Dr. Mathur, the State Agency reviewing psychologists, and the medical expert (Tr. 18-21). At Plaintiff's administrative hearing, the medical expert psychologist testified that Mr. Brescia's opinion as to the extent of Plaintiff's limitations was not supported by Plaintiff's school records, which the medical expert reviewed along with the rest of the exhibits (Tr. 264-65). The medical expert's assessment of the school records was accepted by the ALJ, as well as the longitudinal school reports from psychologist and teachers, indicating that Plaintiff had some problems but did not suffer from debilitating mental limitations. He simply refused to do his work at times, and developed a problem with absenteeism. Dr. Esperon opined that Plaintiff's problem was simply that he stayed up very late, and, therefore, had problems getting up early enough to make it to school, and his recommendations to Plaintiff and his parents were to get Plaintiff to turn off the television and commit to an earlier bed time (Tr. 215-28). A teenager who chooses to stay up late and is subsequently tired the next morning does not have a disabling impairment. Dr. Mathur felt that Plaintiff could perform full-time employment upon graduation from high school (Tr. 217), which implies that he did not believe Plaintiff was disabled by his mental impairments.

The ALJ also felt that Mr. Brescia's conclusions appeared to be inconsistent with his own clinical observations, which did not reveal significant signs of depression, anxiety, or diminished mental functioning (Tr. 20-21).  In addition, Plaintiff's school records showed that, while sometimes he had some social awkwardness and a quiet demeanor, Plaintiff was capable of socializing well in groups, interacting in the classroom, achieving good grades, and meeting graduation requirements (Tr. 76, 77, 78, 89, 104, 173). Hence, the record does not support Mr. Brescia's assessment of Plaintiff's inability to perform basic work-related activities.

The ALJ's RFC finding was consistent with the medical expert's recommendation, which accommodates those limitations supported by the credible evidence in the record.  The RFC finding further accommodates Plaintiff's BIF and related learning disabilities by restricting him to simple, routine tasks.  It also accommodates Plaintiff's problems coping with changes, new situations, and low frustration tolerance by restricting him from jobs requiring arbitration, confrontation, negotiation, production work, or teamwork.  The vocational expert identified thousands of jobs representative of those Plaintiff could perform, despite the limitations caused by his impairments, and the ALJ correctly relied on the vocational expert's testimony to conclude that Plaintiff could perform a significant number of jobs in the economy, and, therefore, was not disabled.

## **VIII. CONCLUSION**

Based upon a review of the entire record, the briefs of the parties, and the law and analysis provided above, the undersigned recommends that this Court affirm the decision of the ALJ.  In the opinion of the undersigned, substantial evidence supports the finding that Plaintiff retained the residual functional capacity to perform a significant number of jobs, despite the limitations caused by his

impairments, and, therefore, was not disabled. Hence, the undersigned recommends that the Court find that he is not entitled to SSI.


Dated:   March 9, 2007                                             */s/George J. Limbert*
                                                                   GEORGE J. LIMBERT
                                                                   UNITED STATES MAGISTRATE JUDGE


      ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985); and Local Rule 72.3.